## C. A. (DON) PEELER v. STATE.

No. A-10129. May 6, 1942.

(125 P. 2d 1007.)

W. C. Peters, of Tulsa, for defendant.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for the State.

BAREFOOT, P. J. The defendant, C. A. (Don) Peeler, was charged in the district court of Tulsa county, with the crime of burglary in the second degree, was tried, convicted and sentenced to serve four years in the state penitentiary at McAlester, and has appealed.

Defendant being unable to make bond pending this appeal, is now confined in the state penitentiary at McAlester and for this reason his case has been advanced.

Numerous assignments of error have been made, but from an examination of the record it is unnecessary to consider but one, which is that the evidence offered by the state is insufficient to sustain the judgment and sentence.

The evidence relied upon by the state for a conviction of the defendant was wholly circumstantial. It is fundamental that one may be convicted upon circumstantial evidence alone, but the true rule as has often been announced by this court is that where circumstantial evidence is relied upon for conviction, the circumstances proved must not only be consistent with each other, but consistent with the defendant's guilt, and inconsistent with any reasonable hypothesis other than his g u i l t. Hicks v. State, 70 Okla. Cr. 284, 106 P. 2d 136.

But where the evidence merely raises a suspicion, or, admitting all that it tends to prove, the defendant's guilt is left doubtful and dependent upon mere suspicion, surmise, or conjecture, it is the duty of the court to advise the jury to return a verdict of acquittal.

The evidence in this case reveals that one W. O. Core operated a service station in the city of Tulsa, where Skelly products were sold. That on the night of the 26th of November, 1940, this place of business was broken into and that certain property was stolen therefrom. The exact description of the property taken was not given, but the prosecuting witness, W. O. Core, testified that "tires, batteries, anti-freeze, Prestone and Zerox" were stolen.

The evidence of W. A. Brauch, whose testimony was given at the preliminary trial, was read to the jury upon proof that he was not in the State of Oklahoma, but was in California. His evidence had not been transcribed and filed in the court clerk's office prior to the beginning of the trial. The court permitted the same to be filed at

the time it was offered, and this is one of the errors complained of by the defendant. It is unnecessary to discuss this error. He testified that on Wednesday morning, before Thanksgiving, about 1:15 a. m., he walked past the filling station in question. That he saw a light burning therein, and saw a boy take some things from the shelf. That he saw the boy leave the building through a window that was open. And later he saw two parties standing by a tree near the station. He did not stop or make any investigation and could not either identify or describe the parties. That some 150 feet from the station, he saw an automobile parked. That he did not take down the license number, but remembered that it was "6-6925", and it was an Oklahoma license plate. The only description of the same he was able to give was that it was a middle sized car and dark color, he thought.

Buck Hindman testified that he was in the used car business and had known the defendant for eight or ten months. That the day prior to Thanksgiving, he had permitted the defendant to use one of his cars. That it was a 1932 Buick tan coupe. That he did not remember the license number, but thought it began with a "6", and it was a Creek county tag. The police officers came to his lot and pointed out a car. He said:

"Q. And that was the car you had let the defendant have, is that correct? A. That is right. Q. Up to the time the police department came by your place and saw that car and pointed it out to you, was that car ever out of your possession from the time the defendant returned it to your lot? A. Well, the police officers came to my house about 10 one night and asked me where I got this Buick, who I got it from. Q. You told them? A. I told them I got it from Jack Meeker (?), and he got it from the Downtown Chevrolet. I asked them what the trouble was, was it hot? They said they don't know, they wanted to ask some questions about it. 'Who has been driving

that automobile?' I told him Don Peeler had been driving it, and he wanted to know when, and how long Don had the car in his possession. I told him something like three weeks. And he asked me when he brought it back, and I told him he brought it back, I believe it was on Tuesday morning about 9 o'clock. And he told me at the time, he said, 'Well, we don't know whether this is the car or not.' But while I was checking this car, there was another Creek county Buick, same color, passed there. And he said, 'Do you know anything about Don Peeler?' I said, 'No, I don't. I sold him the car, and he has done a little work for us, and I don't know anything about him, any more than dealing through the automobile.' Q. That still doesn't answer my question. From the time Don Peeler brought the car back, had it been out of your possession— A. No, it hadn't, never been out of there. Q. You don't remember the exact date he brought it back? A. No, I wouldn't know."

On cross-examination he testified the defendant had not bought the car from him, that he was doing some work on it, and that he could not remember the date when the car was returned by the defendant, but thought it was Tuesday, and that he knew it was 9 o'clock in the morning.

John Neal testified for the state that he lived at 2347 South Nogales in November, 1940. That he lived there with his wife and four children, and with the defendant and his wife, who was witness' sister. That defendant left the house on the night he had heard a burglary was committed. That he did not know where he went. That he had a Buick coupe, model 32 or 33. He did not know when defendant returned home. The next day he saw a gallon of "Zerox" at his home, but did not see any spark plugs. He did not bring it to the house, but saw it sitting in his room on the dresser. He was not present when the officers searched the premises, but was there when the defendant was arrested at his home. He did

not know the license number of the car, and did not know whether it was a Creek county license.

A. L. Selby, a member of the police force, testified that after defendant's arrest, he procured a search warrant and searched the home. One of the assignments of error of the defendant is that this search warrant and affidavit were void. It is unnecessary to pass upon this proposition. He testified that he did not find anything in the house, but found four or five Skelly spark plugs in a car parked in front of the house. He did not testify as to the description of the car or to whom it belonged.

R. R. Runyan, a police officer, testified that he investigated the burglary of the filling station of Mr. Core in November, 1940. That he located the car on the lot of Buck Hindman after talking to him. That he and Policeman Caffey, a fellow officer, arrested the defendant at his home and took from the house certain articles which he does not describe or state what they were, but on cross-examination said that he took a gallon of "Zerox." Complaint is made that the search of the premises was illegal because they had no search warrant, but we find it unnecessary to pass upon this contention.

Roy Housouer, a policeman, testified that he had a conversation with the defendant after he was arrested, about the "Zerox", and defendant told him that he bought it on Friday after Thanksgiving, from the Yellow Cab Station at Admiral and Utica.

R. B. Spencer testified that he was working in November, 1940, at the station at 1649 East Admiral, Admiral and Utica. That they sold "Zerox" anti-freeze, and he examined the records and did not find that they sold any "Zerox" on the 29th day of November, 1940. On cross-examination he testified that three parties worked there and sold the products, but the register would show

the amount on hand each day, including any amount bought during the time. This was the only evidence offered by the state, and the defendant offered no testimony, but stood on his demurrer to the evidence.

From the above evidence, it will be noted that the state did not produce any witness to identify the gallon of "Zerox" or the four or five spark plugs as being the property stolen from the Skelly filling station. This property was not even introduced in evidence. No signs or marks were shown to exist on the property to identify it as the property stolen.

There are a few slight circumstances connecting defendant with the possession of a Buick automobile and with the same tag number as specified by the witness Brauch, but there is no evidence connecting him with the burglary or with the car, except the circumstances hereinbefore stated. An examination of all of the evidence reveals that it is only such as to cast suspicion against the defendant, and is not sufficient to bring it within the rule, that the circumstances must not only be consistent with each other, but consistent with the defendant's guilt, and inconsistent with any other reasonable hypothesis other than his guilt.

The possession of stolen property, recently after the burglary, is, if unexplained, a circumstance tending to show the guilt of the burglary by the person having such possession. But no presumption of law of guilt arises from such possession. In the instant case the proof of possession of the "Zerox" and four or five spark plugs by defendant was very slight. No other property stolen was found in his possession. The fact that he had possession of the Buick car at a time near when the burglary was committed would not be inconsistent with his innocence.

As is stated in the case of Kirk v. State, 39 Okla. Cr. 44, 263 P. 170, 171:

"Where the evidence raises a mere suspicion, or, admitting all that it tends to prove, the defendant's guilt is left doubtful or dependent upon mere supposition, surmise, or conjecture, the court should advise the jury to return a verdict of acquittal."

The record reveals that the defendant was unable to make bond pending this appeal, and that he has been confined in jail and the State Penitentiary since December 5, 1940, a period of 15 months. For the reasons above stated, the judgment and sentence of the district court of Tulsa county is reversed, and the clerk of this court is directed to forward a copy of this opinion to the warden of the State Penitentiary at McAlester, and upon receipt of same, he is directed to discharge the defendant.

JONES and DOYLE, JJ., concur.